IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DAVID ALTON DYALS, SR.,

      Plaintiff,

v.                                                CASE NO. 1:16-cv-13-WTH-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).   ECF No. 1.  The Commissioner has answered,

and both parties have filed briefs outlining their respective positions.  ECF

Nos. 16, 17.  For the reasons discussed below, the undersigned

recommends that the Commissioner's decision be **AFFIRMED**.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Accordingly, pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill should be substituted for former Acting Commissioner of Social Security, Carolyn W. Colvin, as Defendant in this matter. The Clerk is directed to correct the docket accordingly.

# I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB and SSI benefits on April 16, 2012, alleging disability beginning November 7, 2011.  R. 22, 148-59, 202.  His claim was denied initially and upon reconsideration.  At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"), on January 28, 2014, at which Plaintiff and a vocational expert (VE) testified.  R. 36-50.  The ALJ issued an unfavorable decision on March 13, 2014; the Appeals Council denied review.  R. 3-5, 22-29.

This appeal followed.  Plaintiff raises two issues for review: (1) Whether substantial evidence supports the ALJ's assessment of Plaintiff's treating physicians' opinions regarding his limitations due to pain; and (2) Whether the ALJ correctly applied controlling Eleventh Circuit law in assessing Plaintiff's credibility.  ECF No. 16.

# II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person

---

[2] *See* 42 U.S.C. § 405(g) (2000).

would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

---

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet

---

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2016 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The

---

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the

Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of

---

Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

jobs in the national economy that the claimant can perform.[20]  Such

independent evidence may be introduced by a Vocational Expert's ("VE")

testimony, but this is not the exclusive means of introducing such

evidence.[21]  Only after the Commissioner meets this burden does the

burden shift back to the claimant to show that he or she is not capable of

performing the "other work" as set forth by the Commissioner.

### III.  <u>SUMMARY OF THE RECORD</u>

### *A. Findings of the ALJ*

The ALJ determined that Plaintiff has the severe impairments of

degenerative disc disease, degenerative joint disease, and fracture of the

lower extremity.  Plaintiff does not have an impairment or combination of

impairments that meets or equals the listings.  The ALJ determined that

Plaintiff has the RFC to perform light work, except that he is limited to only

occasional use of ladders and no hazards.  R. 25.

The ALJ determined that Plaintiff's statements expressing greater

limitations were not entirely credible.  The ALJ found that Plaintiff's

---

[20] <u>Wolfe</u>, 86 F.3d at 1077-78.

[21] *See id.*

medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible because they were not consistent with the level of care he received (no treatment since June 2013) or the treatment notes from the Tampa Pain Clinic, where Plaintiff treated for his complaints of pain.  R. 26.

The ALJ found that Plaintiff is unable to perform his past relevant work as a construction worker or maintenance mechanic.  Relying on the testimony of a VE, the ALJ found that for a person with Plaintiff's age, education, work experience, and RFC, there are jobs that exist in substantial numbers in the national economy at the light exertional level and that Plaintiff's additional limitations had little or no effect on the occupational base of unskilled work.  The ALJ took administrative notice of the approximately 1600 sedentary to light, unskilled occupations in the national economy.  The ALJ therefore found that Plaintiff was not disabled. R. 28-29.

## B.  *Medical Evidence*

Plaintiff was diagnosed with post-laminectomy syndrome with a

history of radiculopathy in the lumbar spine, hip pain, and degenerative joint disease.  R.  250-378; 391-404-408-27.

In July 2012, Dr. Lance Chodosh performed a consultative examination.  R. 379-87.  At that time, Plaintiff was 49 years old and related a history of back and neck injuries, left femur injury, and severe arthritis.  Plaintiff described a "titanium cage around L4 and L5" and a titanium rod in his left leg.  He originally injured his back in 1988, leading to three surgical procedures to the lumbar spine with instrumentation in 1997. Plaintiff described constant pain in the middle and lower back regions, with involvement of the posterior pelvic region, for which he was treated with medication through a pain management clinic.

Plaintiff stated that he injured his left hip and femur in a 1999 vehicular accident.  Treatment included placement of a metal rod.  Another accident in 2000 resulted in skull fracture and neck injury.  Plaintiff described sharp pains in the neck upon sudden movement, with the pain also being influenced by weather.

Plaintiff related that he last worked in February 2011 as a maintenance mechanic.  He stopped working due to pain.  He stated that

he is independent in activities of daily living, but most activities are painful.

He stated that he could walk and stand for an hour, and sit for one to two

hours.  He is able to bend at the waist and can squat occasionally.  He can

lift 30 pounds, has normal hand function, is able to drive, and has normal

vision, hearing, and speech.  Plaintiff stated that his current medications

were methadone and oxycodone.

Dr. Chodosh performed a physical examination but noted that

Plaintiff's "mild pain behavior limits functional assessment."  With respect

to Plaintiff's musculoskeletal condition, Dr. Chodosh's assessment reflects

normal range of motion in the neck.  Plaintiff's extremities evidenced no

edema, cyanosis, clubbing, deformity, or significant varicosity.  His hands

showed signed of heavy use, including callus.  Plaintiff's feet also showed

mild to moderate callus.  His spine showed no deformity, tenderness, or

paraspinal muscular spasm.  Straight leg raise could not be assessed in

the supine position, limited by general pain, but the test was negative to 90

degrees bilaterally while sitting.  Motor function was grossly normal in all

four extremities, with strength judged 5/5 throughout, including grips.

Manual dexterity was normal, and coordination was good.  Sensation was

decreased to pin in a patchy pattern in both lower legs and feet.  Plaintiff's standing balance was normal.  Dr. Chodosh noted that he "walks slowly, as if in pain."  Plaintiff could walk on toes, but indicated inability to walk on heels or to squat and rise.  To the extent Plaintiff's range of motion revealed limitations, Dr. Chodosh assessed that all limitations were secondary to pain and noted that assessment activity could not be completed because Plaintiff complained of pain or requested that it be stopped.  Dr. Chodosh's report reflects that Plaintiff 's range of motion that could be assessed fell within the normal ranges.  Plaintiff's range of motion that could not be assessed was for hip abduction/adduction and internal/external rotation.  R. 383-85.

Dr. Chodosh's impressions were: 1. Chronic neck and back pain, without physical signs of major impairment; and 2. Pain in area of left hip following remote surgical treatment.  Dr. Chodosh concluded that Plaintiff was able to stand, walk, and sit.  He can stoop occasionally.  His ability to squat could not be determined.  Plaintiff could kneel and could lift and carry 30-40 pounds.  He could handle objects, and could see, hear, and speak normally.  R. 382.

Plaintiff was treated at the Tampa Pain Clinic for pain stemming from lumbar radiculopathy, left hip pain, degenerative joint disease, and post-laminectomy syndrome.  Treatment notes reflect that Plaintiff's medication treatment plan (which included oxycodone, methadone, and Valium) provided sufficient relief so that he was able to function on a day-to-day basis without problematic side effects.  *See* R. 252, 283, 354, 430, 436, 446.  The Tampa Pain Clinic notes do not include any assessment of Plaintiff's functional limitations or opinions regarding his ability to work.

## C.  *Hearing Testimony*

Plaintiff was almost 51 years old on the date of the hearing in January 2014.  He had a GED and had worked primarily in the construction business.  Plaintiff last worked in November 2011, when the construction job he was working on ended and Plaintiff felt he could not continue working due to pain.  Plaintiff testified that he looked for other work but could not get hired because of his medical issues.

Plaintiff testified that he stopped going to the pain clinic in June 2013 when the doctor he was seeing retired and Plaintiff was not satisfied with the new doctor.  He wanted to find another doctor closer to home, but no

one would take him.  Plaintiff testified that he was enduring his pain and felt that he was "dying" from it.  He takes Aleve sometimes, but it does not help.

Plaintiff lives with his elderly mother but does not do much around the house due to his pain and difficulty sleeping.  He sees his family every day.  Plaintiff had a cane at the hearing, but it was not prescribed by a doctor.  Plaintiff testified that he stumbles without the cane because his toes are numb.  He wears a lift in his left shoe.

Plaintiff testified that he cannot stand more than 15 minutes before he starts shaking and hurting.  His hip and right lower back hurt when he sits too long.  He gets relief when he lays down.  He testified that he is unable to lift a gallon of milk due to pain in his back and hip.  His left knee pops out of joint and he has fallen three or four times in a month.  Plaintiff testified that the medication helped for a little while but it made him foggy. He sleeps poorly at night and has to nap during the day.  Plaintiff cares for his personal needs but cannot wash his feet.

The VE testified that Plaintiff's past work was performed at the heavy and medium exertional levels, and at skilled and semi-skilled levels.  R. 36-

50.

# IV. <u>DISCUSSION</u>

## *A. Assessment of Opinion Evidence*

Plaintiff first contends that substantial evidence does not support the

ALJ's decision, which he claims improperly ignored the treating physicians'

opinions regarding the degree to which Plaintiff's chronic pain limits him to

less than full time work at any exertional level.  ECF No. 16 at 11.

It is well-established that substantial or considerable weight must be

given to the opinion, diagnosis and medical evidence of a treating

physician unless "good cause" is shown to the contrary.[22]  If a treating

physician's opinion on the nature and severity of a claimant's impairments

is well-supported by medically acceptable clinical and laboratory

diagnostic techniques, and is not inconsistent with the other substantial

---

[22] <u>Crawford v. Commissioner of Social Security</u>, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  <u>See also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-584 (11th Cir. 1991); <u>Sabo v. Commissioner of Social Security</u>, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

evidence in the record, the ALJ must give it controlling weight.[23]

In this case, although Plaintiff alleges that his treating physician at the pain management clinic opined regarding the effect of his chronic pain on his ability to do full-time work, as the ALJ observed there is *no* treating physician opinion indicating that Plaintiff is disabled or has any work-related limitations grater than those assessed by the ALJ.  R. 28.  On this record, the Court finds that the ALJ's decision is supported by substantial evidence with respect to this claim.

### B.  Plaintiff's Credibility

Plaintiff's second issue asserts that the ALJ's credibility assessment violates the Eleventh Circuit's pain standard.  ECF No. 16 at 11-18.

A claimant may establish his disability through his own testimony of pain or other subjective symptoms.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th Cir.1995).  The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard."  *See Foote*, 67 F.3d at 1560.  Under that test,

---

[23] 20 C.F.R. § 404.1527(d)(2).

evidence of an underlying medical condition must exist.  *Id.*  If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms.  *Id.*  A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.  *Id.* at 1561.

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.  20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors.  *Id*. § 404.1529(c)(1)-(2).  The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type,

dosage, effectiveness, and side effects of the claimant's medication; (5)

any treatment other than medication; (6) any measures the claimant used

to relieve his pain or symptoms; and (7) other factors concerning the

claimant's functional limitations and restrictions due to his pain or

symptoms.  *Id.* § 404.1529(c)(3).  The ALJ then will examine the claimant's

statements regarding his symptoms in relation to all other evidence, and

consider whether there are any inconsistencies or conflicts between those

statements and the record.  *Id.* § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to his

subjective symptoms, the ALJ must articulate explicit and adequate

reasons for doing so or the record must be obvious as to the credibility

finding. *See Foote*, 67 F.3d at 1561–62.  While the ALJ does not have to

cite particular phrases or formulations, broad findings that a claimant was

incredible and could work are, alone, insufficient for the Court to conclude

that the ALJ considered the claimant's medical condition as a whole.  *Id*. at

1562.  The ALJ's articulated reasons must also be supported by

substantial evidence. *Jones v. Dep't of Health & Human Servs*., 941 F.2d

1529, 1532 (11th Cir.1991).  The Court will not disturb a properly

articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562.

In this case, the ALJ applied the correct pain standard and found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the limiting effects of such symptoms were not entirely credible as they were not consistent with the level of care he has received (no treatment since June 2013) or the treatment notes from the pain clinic.  R. 25-26. The ALJ then articulated reasons for this conclusion.

The ALJ first noted that the medical records do not reflect that Plaintiff has received the type of medical treatment one would expect for a totally disabled individual.  The ALJ observed that the treatment notes from the pain clinic disclose that Plaintiff's pain was "well enough controlled" with medication.  Plaintiff testified at the hearing that he had taken no prescription medication since June 2013, when his original physician retired.  R. 27.  Plaintiff's testimony reflects that another physician took over his care, but for reasons that Plaintiff did not articulate he was not satisfied with the care and stopped going to the Tampa Pain Clinic.

Plaintiff did state that he wanted to find a doctor closer to home, but the Tampa Pain Clinic treatment notes reflect that Plaintiff's medication was provided by mail in order to relieve the financial and logistic burden of returning to the clinic frequently.  Under the clinic's RX program, Plaintiff was seen only every three months.  R. 39; *see* R. 252.

The ALJ's determination that Plaintiff complaints of disabling symptoms were not credible also was partially based on Plaintiff's testimony and history, which is a factor that may be considered.  20 C.F.R. § 404.1529(c)(1)-(2).  The ALJ noted that although Plaintiff testified that he uses a handmade cane to ambulate, nothing in the record established that a handheld assistive device was medically required.  Plaintiff previously had stated to the Social Security field office that he did not require use of an assistive device.  R. 27.

In assessing Plaintiff's credibility, the ALJ also afforded some weight to the opinion of a reviewing consultant who concluded that Plaintiff could perform medium work.  The ALJ gave Plaintiff the benefit of the doubt in assessing greater limitations.  R. 27.

With respect to Dr. Chodosh's examination, the ALJ afforded it great

weight to the extent that it was consistent with the assessed RFC.  The

ALJ specifically pointed to Dr. Chodosh's report that Plaintiff had back pain

"without physical signs of a major impairment," that Plaintiff reported he

was independent in activities of daily living, and that Plaintiff was able to

walk and stand for one hour, sit for one to two hours, and lift thirty pounds.

R. 28.   Dr. Chodosh's report contains other findings that are inconsistent

with Plaintiff's subjective complaints.  Dr. Chodosh noted only "mild pain

behavior" by Plaintiff.  His straight leg raising test was negative to 90

degrees bilaterally while sitting, motor function was normal with 5/5

strength throughout, manual dexterity was normal, and coordination was

good.  Dr. Chodosh concluded that Plaintiff was able to stand, walk, sit,

stoop occasionally, kneel, and lift 30-40 pounds.  He could handle objects,

and could see, hear, and speak normally.  R. 382.

Plaintiff contends that the pain medication regimen prescribed by

Tampa Pain Clinic precludes the ALJ from discrediting his subjective pain

testimony.  It is undisputed that Plaintiff received significant prescription

pain medications for several years.  However, it is also undisputed that

none of the pain clinic notes provide an assessment of the functional effect of Plaintiff's impairments.  Further, Plaintiff had not been prescribed medication for pain for more than six months prior to the hearing.  Viewing this evidence in conjunction with the opinion evidence from the consulting and reviewing physicians, the ALJ's finding that Plaintiff's subjective complaints were not entirely credible is supported by substantial evidence.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The  question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** this 3ʳᵈ  day of March 2017.

*s / Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**